## 58274. HOLLINGSWORTH et al. v. CUNARD LINE LIMITED.

QUILLIAN, Presiding Judge.

Plaintiffs below, Mr. and Mrs. Hollingsworth, appeal from the grant of defendant Cunard Line's "Motion to Dismiss," based on the ground that Cunard was not subject to the jurisdiction of the court under the state's Long Arm Statute, Code Ann. § 24-113.1 (Ga. L. 1966, p. 343; 1970, pp. 443, 444).

Mr. Hollingsworth became interested in a round-the-world cruise offered by Cunard in 1976 on the

Queen Elizabeth II (QE II) after seeing an advertisement in the Atlanta Journal-Constitution of March 14, 1976. He wrote a letter to the address listed in the advertisement and received a sales brochure on the upcoming cruise. Because of business commitments he could not make that trip. But, when another advertisement appeared in the November 7, 1976 edition of The Atlanta Journal-Constitution announcing a 1977 round-the-world cruise on the QE II, he contacted the local travel agency listed in the advertisement — the Thomas Cook agency. Mrs. Hollingsworth was an avid duplicate bridge player and Mr. Hollingsworth indulged in the game of poker as an avocation. He frequently participated in games of poker with professionals in Las Vegas, with neighbors, and at local fraternal clubs. The brochure stated a casino was aboard the QE II and the local Cook employee assured him poker was available on the QE II. The Hollingsworths made all their travel arrangements with the Osborne Travel Agency of Atlanta. While at Osborne Mr. Hollingsworth again inquired whether poker was available aboard the QE II and the agent called Cunard in New York and was informed that it was. Cunard had hired the Thomas Cook Travel Agency to handle the nationwide promotion of the 1977 trip, and the shore excursions from the QE II, and had forwarded to Cook — as they had to other travel agencies — such as Osborne, blank passenger ticket stock.

Cunard stated that it did not directly engage in the promotion of the 1977 world cruise of the QE II. They "advertised the cruise in magazines with a nationwide circulation and also distributed brochures to travel agencies with offices throughout the country . . . None of the travel agencies to which brochures were distributed has a specific agreement or understanding with respect to any promotion or advertising of the Cruise in any state with the exception of Thomas Cook . . ." Cunard denied that they were responsible for the advertisement of the 1976 world cruise. Cunard also denied that any agency agreement existed with any travel agency although they were sent brochures on trips and blank passenger ticket stock. They admitted that "if a travel agency is provided with passage contract ticket stock, the authority to write

passage contract tickets is implied." However, "[n]o travel agent can book accommodations in Cunard vessels since all cabin allocations are made centrally in New York . . ." Cunard stated that the Thomas Cook Travel Agency of Atlanta "did not serve as the agent of Cunard for any of the stated purposes." The Osborne Travel Agency in Atlanta completed the Cunard application for tickets and other incidentals such as helping select a cabin and dining-room for the Hollingsworths. Cunard, in New York, confirmed the cabin arrangements and forwarded the Hollingsworths' tickets to them in Georgia. Mr. Hollingsworth forwarded a check for $5,000 with the application on November 11 and the balance on December 10 of $8,090. Cunard had established an October 1 deadline after which refunds would not be made.

Mr. Hollingsworth received his tickets on January 12, 1977, in Georgia. Included was a "Cunard Passage Contract Ticket." Paragraph 23 of the "Contract Ticket" states: "The terms contained in this passage contract constitute the whole of the contract between the Company and the passenger, and no representations or conditions contained in the Company's advertisements, notices, pamphlets, booklets, receipts or other documents issued by any of the servants or agents of the Company shall in any way affect or modify or increase the liability of the company other than as set forth in this contract ticket."

The complaint was brought on two counts. The first count alleged breach of contract and the second count was based on fraud. Both counts alleged that Cunard induced their contract by "misrepresentations" of five specified services, stops, or amenities, that were not available on the trip. Not only was poker not available in the QE II casino but the cruise director actively prevented Mr. Hollingsworth from organizing a poker game among interested passengers. The Hollingsworths departed the cruise in South Africa. Defendant Cunard's motion to dismiss for lack of jurisdiction under the Long Arm Statute was granted. Plaintiffs bring this appeal. *Held:*

The resident plaintiff brought this action for breach of contract and fraud in the Georgia forum against the nonresident defendant under our Long Arm Statute — Code Ann. § 24-113.1 (Ga. L. 1966, p. 343; 1970, pp. 443,

444). The Long Arm Statute permits courts of this state to exercise personal jurisdiction "over any nonresident . . . as to a cause of action arising from any of the acts [enumerated]: (a) Transacts any business within this State; or . . . (c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct . . . ."

We need only consider whether the defendant transacted any business within the state. "Under our Long Arm Statute jurisdiction over a nonresident exists on the basis of transacting business in this state if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Davis Metals v. Allen,* 230 Ga. 623, 625 (198 SE2d 285). "[T]he trend of the opinions is to construe long arm 'transacting any business' statutes most liberally and to uphold the jurisdiction of the court of the plaintiff's residence in actions arising, either directly or indirectly, out of such transactions." Id. at 626. Accord, McGee v. International Life Ins. Co., 355 U. S. 220, 222 (78 SC 199, 2 LE2d 223); Annot. 27 ALR3d 397. In accordance with this trend, our Supreme Court has adopted the "Illinois Rule" which is predicated "on the premise that the Long Arm Statute contemplates that jurisdiction shall be exercised over non-resident parties to the maximum extent permitted by procedural due process." *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 60 (195 SE2d 399).

The U. S. Supreme Court's latest examination of this issue was in Kulko v. California Superior Ct., 436 U. S. 84, 91 (98 SC 1690, 56 LE2d 132) (1978), where they held:

"The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought [cit.], and a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum."

"In order to satisfy the constitutional requirement of

procedural due process, it must be shown that the non-resident defendant has some 'minimum contact' with the forum state so as to make that state's exercise of jurisdiction over the defendant reasonable." *Timberland Equip. Ltd. v. Jones,* 146 Ga. App. 589, 590 (246 SE2d 709). Cunard denied that it placed the March 1976 advertisement in the Atlanta newspaper but admitted that it had employed the Thomas Cook Travel Agency to conduct a nationwide campaign for its 1977 worldwide cruise. They also forwarded blank ticket stock to local travel agencies with implied authority "to write passage contract tickets . . ." and had frequent telephone conversations with local travel agencies for cabin and dining reservations. The completed "ticket contract" was mailed to the traveler in Georgia.

We must emphasize that we are not here dealing with the traditional "principal-agency" theory of respondeat superior. We are concerned with whether a forum state may exercise personal jurisdiction over a nonresident defendant based upon the "minimum contact" theory of International Shoe Co. v. State of Wash., 326 U. S. 310 (66 SC 154, 90 LE 95). "[W]ith the liberalization of the due process criteria [McGee v. International Life Ins. Co., 355 U. S. 220, 222, supra], the jurisdictional distinction between agents and independent contractors has begun to fade. Courts treat persons who derive commission revenue [travel agencies], not in terms of agents or independent contractors, but they view their activities and status, in a realistic commercial light." Mulhern v. Holland America Cruises, 393 FSupp. 1298 (DC NH 1975). National and local advertising alone would not necessarily constitute transaction of business generally within a specific state. Scott Paper Co. v. Scott's Liquid Gold, 374 FSupp. 184, 187 (DC Del. 1974). However, it cannot be rationally denied that the purpose and intent of such advertising was to create consumer demand for the advertised product and the created business cycle was completed through the implied appointment of local travel agencies by forwarding to them blank ticket stock for the particular advertised cruise. Thus, the commercial travel business is apparently operated on an organizational arrangement

so as to insulate the carrier from local jurisdiction. See Scott Paper Co. v. Scott's Liquid Gold, 374 FSupp. 184, 187, supra. It is crystal clear that if Cunard employees had conducted all national and local advertising, and local Cunard employees had finalized ticket arrangements, jurisdiction over Cunard could not legally be contested. Thus, the issue is can Cunard, by conducting its commercial activities through a contractual process with an independent contractor for advertising and a fee arrangement with local travel agencies, insulate itself from local jurisdiction, i.e. legal action in the local forum based on a contract which was induced by its advertising campaigns and finalized by local independent travel agencies?

The issue is particularly acute in the travel industry, as evidenced by the instant case, where consumer demand was created by local advertisements in March and November of 1976 but refunds were not permitted after October 1, 1976 and the application for tickets with a $5,000 check was not forwarded until November 11, 1976. The Cunard "contract ticket," received in Georgia on January 12, 1977, contained "disclaimer" provisions for any prior "representations or conditions contained in the Company's advertisements, notices, pamphlets, booklets, receipts or other documents . . ." Cunard apparently attempted to dissociate itself from its earlier inducements after it was too late for anyone to claim a refund.

The corporate personality is a legal fiction, and a corporate "act," "contact," or "presence" may be consummated only through personnel authorized to act for it. Accordingly, Cunard's "contacts" or "presence" in the forum state must be by authorized personnel. " 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." International Shoe Co. v. State of Wash., 326 U. S. 310, 317, supra. "But to the extent that the corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that

privilege may give rise to obligations and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." Id. at 319. "It is sufficient for purposes of due process that the suit was based on a contract which has substantial connection with that State." McGee v. International Life Ins. Co., 355 U. S. 220, 223, supra. It is undisputed that Cunard voluntarily availed itself of the right to conduct commercial activities within the State of Georgia on a continuing and systematic basis through its national and local advertising and distribution of ticket stock to different travel agencies, and telephone correspondence with such travel agencies. See *Porter v. Mid-State Homes,* 133 Ga. App. 706, 707 (213 SE2d 10); *Walker & Assoc. v. Buschman,* 147 Ga. App. 851, 853 (250 SE2d 532). The further requisites of procedural due process have been met by adequate notice and opportunity to appear and be heard. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 62, supra. The trial court erred in sustaining the motion to dismiss based on lack of jurisdiction.

*Judgment reversed. Smith and Birdsong, JJ., concur.*

SUBMITTED SEPTEMBER 10, 1979 — DECIDED OCTOBER 30, 1979 — REHEARING DENIED NOVEMBER 26, 1979 —

*Robert E. Hall,* for appellants.
*H. Andrew Owen,* for appellee.