James M. TREADWELL, Jr., Plaintiff,

v.

R. Preston LACKEY, Defendant.

Civ. A. No. 81–97–ATH.

United States District Court,
M.D. Georgia,
Athens Division.

Jan. 3, 1984.

James E. Carter, Madison, Ga., for plaintiff.

David E. Barrett, Athens, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Presently before the court is the motion of defendant R. Preston Lackey to dismiss plaintiff's complaint for lack of personal jurisdiction on the grounds that the claims for relief set forth in the complaint do not provide a basis for *in personam* jurisdiction as to him under the Georgia long-arm statute, Official Code of Ga.Ann. § 9–10–91 (Michie 1982), Ga.Code Ann. § 24–113.1 (Harrison 1981).

### Background

Plaintiff James M. Treadwell, Jr. is a resident of Madison, Georgia. Defendant R. Preston Lackey is a resident of Greenville, South Carolina. Plaintiff filed this diversity action in this United States District Court asserting claims both *ex contractu* and *ex delicto*.[1]

In 1975 plaintiff was a C.P.A. with his own office in Madison, Georgia. Defendant, also a C.P.A., was the senior partner in the South Carolina accounting firm of

---

1. Plaintiff's action in tort is grounded in defendant's alleged fraudulent misrepresentation of facts which plaintiff claims caused him financial loss.

Defendant correctly points out that such a claim is one for damages to personalty which must be brought within four years after the right of action accrues. *See, Sears, Roebuck and Co. v. Green,* 142 Ga.App. 770, 237 S.E.2d 10 (1977); Official Code of Ga.Ann. § 9–3–31 (Michie 1982), Ga.Code Ann. § 3–1002 (Harrison 1975); Official Code of Ga.Ann. § 9–3–96 (Michie 1982), Ga.Code Ann. § 3–807 (Harrison 1975).

In plaintiff's case, the latest date from which the period of limitation could possibly be calculated is December 1, 1975 (the latest date on which plaintiff should have discovered the alleged fraud practiced upon him). There is no dispute that this action was not commenced until September 30, 1981, more than four years after the date by which plaintiff should have discovered the alleged fraud. Accordingly, to the extent that plaintiff seeks to assert a cause of action in tort based upon fraudulent misrepresentation, his complaint is BARRED by the applicable statute of limitation.

Lackey, Ferrell and Harris whose principal office was in Greenville.

Sometime during the early part of 1975, plaintiff began discussing the possibility of his joining the firm of Lackey, Ferrell and Harris with his cousin, Gary Harris, a partner in the firm. These discussions began informally and took place mainly over the telephone or at family gatherings in Easley, South Carolina. At some point in the discussions with Gary Harris plaintiff made known his desire to open an office in Athens, Georgia.

As the discussions progressed so as to take on the character of actual negotiations preparatory to plaintiff's joining the firm, plaintiff communicated mainly with Gerald Harris, another cousin who was also a partner in the firm. Most of the negotiations with Gerald Harris took place either by correspondence or by telephone.

Sometime during the spring or early summer of 1975, a general agreement was reached concerning the terms of plaintiff's entering the firm. At this time it had been determined that there would be an Athens office. Indeed plaintiff had made such an office a precondition to his entering the partnership.

Up until this time plaintiff had had very little contact with defendant with regards to his entering the partnership. The one meeting that plaintiff remembers having had with defendant was in Greenville subsequent to the details of the partnership agreement having already been worked out with Gerald and Gary Harris.

In late August or early September defendant had occasion to visit the State of Georgia. He accompanied the Harrises

from Greenville to Madison to pick up plaintiff and then to Athens to inspect proposed office sites. An office on Milledge Avenue in the Smith-Boley-Brown Building was agreed upon as being the best available choice and a lease was subsequently signed by the partners. It appears that defendant, Gerald and Gary Harris, and Robert V. Ferrell signed the lease in South Carolina.

No negotiations took place during this trip between plaintiff and defendant as to the terms of the partnership—defendant merely participated in the selection of a suitable office site. This trip was defendant's only trip into the State of Georgia.

Sometime after returning to Greenville (probably still in September, 1975) defendant called a partnership meeting of Lackey, Ferrell and Harris at which he announced his intention to retire as of November 30, 1975 (prior to the effective date of the new partnership agreement establishing the firm of Lackey, Ferrell, Harris and Treadwell). Defendant, who was seventy-one years of age at the time he announced his decision, informed his fellow partners in Lackey, Ferrell and Harris that he would take the responsibility for notifying plaintiff of his decision to retire. Thereafter, sometime around the end of September, 1975, defendant informed plaintiff by telephone of his intention to retire as of November 30th.

■ Plaintiff, after being informed of defendant's decision to retire, proceeded to join the new partnership of Lackey, Ferrell, Harris and Treadwell and continued as a partner in that firm for a 25½ month period until the firm was dissolved in January of 1978.[2]

---

**2.** The effective date of the new partnership of Lackey, Ferrell, Harris and Treadwell was December 1, 1975. As was stated previously, defendant retired from Lackey, Ferrell and Harris effective November 30, 1975.

The final typewritten partnership agreement establishing the firm of Lackey, Ferrell, Harris and Treadwell was prepared and signed after the effective date of defendant's retirement. For reasons known only to defendant (and probably relating to his claim for retirement benefits), he chose to sign the new partnership agreement even though he had already retired

prior to the effective date of the agreement. He signed the new partnership agreement in Greenville.

Even though defendant signed the partnership agreement establishing the firm of Lackey, Ferrell, Harris and Treadwell, and even though the firm had offices in Madison and Athens, he was nonetheless never a "partner" in the new firm so as to be amenable to suit in Georgia on the basis of the firm's doing business in Georgia. In *Hayes v. Irwin*, 541 F.Supp. 397, 415 (N.D.Ga. 1982), the court stated that the "true determinant of a partnership is the objective intent of

Plaintiff commenced the instant lawsuit against defendant on September 30, 1981, alleging that he has sustained damages as a result of defendant's having breached the partnership agreement establishing the firm of Lackey, Ferrell, Harris and Treadwell. Plaintiff's suit is related to and perhaps should have been included as a part of litigation commenced by defendant in the State of South Carolina seeking retirement benefits allegedly owed to him by plaintiff.

### Discussion

As was hereinbefore stated, *in personam* jurisdiction in this case is predicated upon Georgia's long-arm statute, Official Code of Ga.Ann. § 9–10–91, which provides in pertinent part that:

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within the state....[3]

In *Hayes v. Irwin*, 541 F.Supp. 397 (N.D. Ga.1982), the court articulated the applicable principles of law with regards to *in personam* jurisdiction and Georgia's long-arm statute:

In a diversity case, a federal court may exercise *in personam* jurisdiction over a nonresident defendant only to the extent permitted by the long arm statute of the forum. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933); *Gold Kist Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375 (5th Cir.1980); *Attwell v. LaSalle National Bank*, 607 F.2d 1157 (5th Cir.1979). Furthermore, it is a well accepted principle of law that a nonresident defendant is subject to the jurisdiction of the court in the forum state only if he has established minimum contacts in the state so that the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See also Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979); *Timberland Equipment Ltd. v. Jones*, 146 Ga.App. 589, 246 S.E.2d 709 (1978). The Long Arm Statute enacted by the Georgia legislature ,contemplate's that jurisdiction is to be exercised over nonresident parties to the maximum extent permitted by procedural due process. *Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979); *Coe & Payne Company v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973). In order to satisfy the constitutional requirements of procedural due process, it must be shown that a nonresident defendant has some 'minimum contact' with the state of Georgia so as to make the exercise of jurisdiction reasonable and fair. *Hollingsworth v. Cunard Line Ltd.*, 152 Ga.App. 509, 263 S.E.2d 190 (1979); *Timberland Equipment Ltd. v. Jones*, 146 Ga.App. 589, 246 S.E.2d 709 (1978).

*Id.* at 416–17.

Subsection (1) of Georgia's long-arm statute authorizes a court to exercise *in personam* jurisdiction over a nonresident defendant if that defendant "transacted any business within the state." In *Davis Metals v. Allen*, 230 Ga. 623, 625, 198 S.E.2d 285, 287 (1973), the Georgia Supreme Court set forth the following three-part test to be applied in determining whether a nonresident defendant is "transacting business:" (1) the nonresident must purposefully do some act or consummate some transaction

---

the parties involved." Even though defendant signed the new partnership agreement it is evident by the surrounding circumstances, (*i.e.,* that he had announced his retirement, that he was no longer sharing in the profits, losses, or liabilities of the firm, that he was no longer exercis-

ing any control in the firm, and that his capital account had been reduced to zero) that he was never a partner in the new firm.

**3.** Subsections (2) through (5) are inapplicable in the instant action.

in this state; (2) the cause of action must arise from or be connected with such act or transaction; and (3) the exercise of jurisdiction by the courts of this state must not offend traditional notions of fair play and substantial justice.

In the instant case it is undisputed that defendant during late August or early September 1975, visited the State of Georgia with Gerald and Gary Harris in order to participate in the selection of an Athens office for plaintiff. As far as can be determined defendant during the time pertinent to this lawsuit made only this one visit to the State of Georgia and did not stay overnight on this visit. No lease agreement was signed by defendant or the other South Carolina partners while in Georgia. Defendant did not engage in any negotiations with plaintiff concerning his entering the partnership while in Georgia.[4] Defendant did not sign the partnership agreement while in Georgia.

Apart from defendant's visit in Georgia on this one occasion, he had two other "connections" with this state. One, he telephoned plaintiff in Georgia to inform plaintiff of his decision to retire. Two, after having retired, he undoubtedly received as a part of his retirement benefit money that had been earned by plaintiff in the State of Georgia.

■ Under the circumstances of this case, this court cannot find that defendant by visiting Athens to participate in the selection of an office, by telephoning plaintiff to inform plaintiff of his decision to retire, and by receiving retirement benefits composed in part of money derived from plaintiff's work in Georgia, transacted business within this state. Defendant's actions simply do not constitute the requisite "minimum contacts" with the State of Georgia so as to make the exercise of jurisdiction

reasonable and fair. *See, Fowler Products Co. v. Coca Cola Bottling Co.*, 413 F.Supp. 1339 (M.D.Ga.1976); *O.N. Jonas Co., Inc. v. B. & P. Sales Corp.*, 232 Ga. 256, 206 S.E.2d 437 (1974). Accordingly, defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction is hereby GRANTED.

---

**4.** Indeed from everything the court has read in this case, it appears that defendant did very little, if any, of the actual negotiating with plaintiff concerning the details of his entering the partnership. What negotiating defendant did with plaintiff occurred in South Carolina. Furthermore, any documents that were signed by defendant were signed in South Carolina.

Plaintiff seeks to characterize any conversation that he had with defendant while in Athens as "negotiations." However, in the opinion of this court, the conversations that plaintiff described as having occurred with defendant cannot under any circumstances be labeled as "negotiations" pertinent to someone's entering into a partnership. They were merely casual conversations—nothing more, nothing less.