**IRVING COMMERCIAL CORPORATION, f/k/a Irving Factors Corporation, Plaintiff,**

v.

**SOUND FLOOR COVERINGS, INC., Defendant.**

**Civ. A. No. C83–163R.**

United States District Court,
N.D. Georgia,
Rome Division.

Sept. 18, 1984.

Kevin C. Greene, Atlanta, Ga., for plaintiff.

Paul T. Carroll, III, Rome, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

The nonresident defendant in this action moves the Court to dismiss for lack of personal jurisdiction. After carefully considering Georgia's long-arm statute, its interpretation by the courts, and the constitutional requirement of minimum contacts, the Court concludes that the Georgia Supreme Court would not exercise jurisdiction over the defendant in this case. The action is, therefore, dismissed.

### FACTS

The plaintiff, Irving Factors, owns certain accounts receivable obtained from Sweetwater Carpet Corporation ("Sweetwater") under a factoring arrangement. Among these accounts are defendant's obligations amounting to $11,393.29 for carpet purchased. Defendant is a Washington corporation that distributes carpeting and floor covering materials throughout the Northwest United States. Irving Factors brought this diversity action in the federal court to collect on these accounts.

The nonresident defendant had the following "contacts" with Georgia. The defendant regularly attended trade fairs in Georgia where Georgia carpet manufacturers displayed their wares. Sweetwater was one of the manufacturers that dis-

played samples of its carpet at these trade fairs. As a result of Sweetwater's pitch, the defendant visited Sweetwater's mill to determine whether it would buy carpet from Sweetwater. The defendant apparently liked what it saw and, upon returning to Washington, placed orders with Sweetwater. The defendant then sent its trucks from Washington into Georgia to pick up the carpet. For the trip from Washington to Georgia, the defendant hauled goods for Georgia residents unrelated to the carpet transactions in order to cover the costs of sending the trucks across the country. In relation to this trucking business, the defendant possesses a certificate of authority to conduct motor carrier operations in Georgia and maintains a registered agent in Georgia, pursuant to O.C.G.A. § 46–7–17, who may be served in any action arising out of the carrier operations.

## DISCUSSION

█ A federal court in a diversity action has personal jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state. Fed. R.Civ.P. 4(e); *Southwire Company v. Trans-World Metals & Company, Ltd.,* 735 F.2d 440, 442 (11th Cir.1984). Personal jurisdiction in this sale of goods transaction must thus be predicated on the first section of the Georgia long-arm statute:

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within this state . . . .

O.C.G.A. § 9–10–91 (1982). This transacting business prong of the long-arm statute has been interpreted in several Georgia Supreme Court opinions.

In *Davis Metals, Inc. v. Allen,* 230 Ga. 623, 198 S.E.2d 285 (1973), the supreme court held that the defendant's physical presence while executing an employer/employee noncompetition contract in Georgia constituted transacting business within the state such that long-arm jurisdiction existed over the nonresident defendant. Georgia Court of Appeals cases have extended the holding in *Davis Metals,* holding that negotiations in Georgia leading to an advertising contract, *Delta Equities, Inc. v. Larwin Mortgage Investors,* 133 Ga.App. 382, 211 S.E.2d 9 (1974), or visits to Georgia subsequent to a loan contract, *Shea/Rustin, Inc. v. Home Fashion Guild, Ltd.,* 135 Ga.App. 88, 217 S.E.2d 405 (1975), constitute transacting business, even though the contract is executed elsewhere.

In *J.C. Penney v. Malouf,* 230 Ga. 140, 196 S.E.2d 145 (1973), the supreme court was presented with a sale of goods contract as in the present case. The supreme court held that a nonresident defendant that places goods in the stream of Georgia commerce avails himself of the privilege of conducting business in Georgia and is therefore subject to the court's long-arm jurisdiction under the transacting business prong. This holding was extended by the Georgia Court of Appeals in *Hollingsworth v. Cunard Line Limited,* 152 Ga.App. 509, 263 S.E.2d 190 (1979). The court quoted *Davis Metals* for the proposition that "[T]he trend of the opinions is to construe long arm 'transacting any business' statutes most liberally and to uphold the jurisdiction of the court of the plaintiff's residence in actions arising, either directly or indirectly, out of such transactions." *Id.* at 512, 263 S.E.2d 190. The court held that even though the nonresident defendant, in providing vacation travel services for Georgia residents, had not physically placed goods in the stream of Georgia commerce, the defendant had availed himself of the privilege of conducting commercial activities in Georgia on a continuing and systematic basis and was therefore transacting business under the Georgia long-arm statute.

In *O.N. Jonas Co., Inc. v. B & P Sales Corp.,* 232 Ga. 256, 206 S.E.2d 437 (1974),

the supreme court was presented with a second sale of goods contract. The supreme court held that a nonresident defendant who merely purchases goods manufactured in Georgia, and thus places no goods himself in the stream of Georgia commerce, is not subject to the long-arm jurisdiction of the Georgia courts. Moreover, the supreme court refused to exercise jurisdiction despite the defendant's having visited the Georgia manufacturing plant "which eventually resulted in the purchases," *id.* at 258, 206 S.E.2d 437, and despite the defendant's having taken the goods FOB shipping point—*i.e.*, in Georgia.

The *O.N. Jonas* case created some uncertainty in the court of appeals as to whether the supreme court was actually extending long-arm jurisdiction to the constitutional limit. In *Process Systems Inc. v. Dixie Packaging Co., Inc.*, 137 Ga.App. 452, 224 S.E.2d 103 (1976), the Georgia court was asked to give full faith and credit to a default judgment entered by a New Jersey court pursuant to their finding that long-arm jurisdiction existed over the Georgia defendant. The Georgia court noted that, unlike Georgia's long-arm statute which confers jurisdiction over a foreign corporation as to a cause of action arising from the transaction of "any business" within the state, the New Jersey long-arm statute expressly confers long-arm jurisdiction to the extent permitted under the due process clause. *Id.* at 454, 224 S.E.2d 103. On facts similar to *O.N. Jonas* in terms of the nonresident's contacts with the state, the court upheld the New Jersey exercise of jurisdiction. As for the supreme court's opinion in *O.N. Jonas*, holding that similar facts did not meet the statutory requirement of transacting business, the court cryptically observed that:

> Mailing or telephoning orders to another state does not of itself constitute the transaction of any business where, although agents of the foreign corporation visited the Georgia seller's manufacturing plant, no goods were purchased in

Georgia and no contracts were executed in Georgia. *O.N. Jonas Co. v. B & P Sales*, 232 Ga. 256 (206 S.E.2d 437). That the *transacting business* statutes may be narrower than the limits of due process, see 27 ALR3d 397, Anno., Jurisdiction over Nonresident, §§ 2, 5.

*Process Systems* 137 Ga.App. at 456, 224 S.E.2d 103.

Despite the uncertainty expressed by the Georgia Court of Appeals, the former Fifth Circuit Court of Appeals expressed no doubt whatsoever in concluding that the Georgia Supreme Court intended to extend the transacting business prong of the Georgia long-arm statute to the constitutional limit. *See Gold Kist Inc. v. Baskin-Robbins Ice Cream Company*, 623 F.2d 375, 378 (5th Cir.1980). In *Gold Kist*, the nonresident defendant purchased Georgia pecans for use in ice cream. Much of this ice cream was produced in a plant in Columbus Georgia. The defendant had visited the plaintiff's pecan plant and had ordered certain quantities of pecans. The court of appeals, when confronted with the issue of personal jurisdiction, distinguished *O.N. Jonas* by scrutinizing the nature of the nonresident defendant's physical presence in Georgia as the Georgia courts had been doing in non-sale-of-goods contract cases. The court was able to find several ephemeral distinctions based on these cases. The court found that the nonresident defendant, rather than visiting the plant before placing an order as had the defendant's in *O.N. Jonas*, went to the plant to negotiate before placing an order. The court also found that the nonresident defendant, rather than placing a purchase order in the mail, put a contract in the mail that was subsequently executed in Georgia by the plaintiff.

The court of appeals in *Gold Kist* cited cases that involved non-sale-of-goods contracts in drawing these distinctions.[1] In non-sale-of-goods contracts, however, the negotiation, the execution, and the supervi-

---

[1] The court relied heavily on *Shea/Rustin, Inc. v. Home Fashion Guild Ltd.*, 135 Ga.App. 88, 217 S.E.2d 405 (1975) (contract to organize, prepare and print advertising campaign) and *Delta Equities, Inc. v. Larwin Mortgage Investors*, 133 Ga. App. 382, 211 S.E.2d 9 (1974) (loan contract).

sion of the contract, will often play a much greater role in the relationship between the parties than they do in the typical sale of goods contract. Physical presence in the state of Georgia during one of these phases provides a clearer indicator of the actual transaction of business in the state. In sale of goods contracts, on the other hand, "negotiation" is often restricted to a simple determination of whether the goods conform to the buyer's needs. "Execution" generally consists of sending a purchase order form with boiler plate provisions that may or may not become the contract. And supervision is generally absent. The Georgia courts have implicitly chosen, in run-of-the-mill sale of goods cases, to focus on whether the nonresident defendant has availed himself or herself of the privilege of placing goods in the stream of Georgia commerce. In *Gold Kist*, the ephemeral distinctions drawn between the facts in that case and the facts in the *O.N. Jonas* case were unnecessary. Had the court focused on whether the defendant had availed itself of the Georgia market for its goods, the court could have found that the pecans, while ordered from out of state, were placed directly in the stream of Georgia commerce. They were shipped to Columbus, Georgia. Thus regardless of the presence or absence of the defendant in Georgia before placing the orders for pecans and regardless of where the contract was executed, the nonresident was transacting business in Georgia for purposes of the long-arm statute.

■ The action presently before the Court, however, squarely presents the problem created by the *O.N. Jonas* case— whether or not the Georgia Supreme Court interprets the transacting business prong of the long-arm statute to extend to the limits of constitutional due process. Under the rationale of *O.N. Jonas,* the Court can find no meaningful factual distinctions between this action and the *O.N. Jonas* case. The plaintiff has suggested that actual negotiations took place in Georgia before the order for carpet was placed from Washington. The evidence reveals, however, that while the defendant regularly attend-

ed trade fairs in Georgia, the "negotiations" in this sale-of-goods case were no more extensive than the visit to the plaintiff's plant in the *O.N. Jonas* case. The plaintiff also has suggested that the defendant was physically present when the carpet was picked up, because the carpet was shipped F.O.B. the plant in Georgia. Yet, in *O.N. Jonas* the goods were also shipped F.O.B. shipping point. Admittedly, the defendant in this case operated its own trucking line and, therefore, had an agent shipping the carpet to Washington, rather than an independent trucking company. As for a cause of action arising from the trucking activities, however, any attempt to exercise long-arm jurisdiction would be futile. The defendant is a resident for that purpose, and the long-arm statute applies only to nonresidents. In any event, this case does not involve a cause of action arising from the defendant's trucking activities.

The plaintiff has failed to show that the contacts that relate to the transaction giving rise to this cause of action were any greater than those in *O.N. Jonas.* Yet, the Court must agree with the plaintiff that the broad interpretation given the Supreme Court's decision in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), leads inevitably to the conclusion that constitutional minimum contacts exists. Thus the Court is faced with, on the one hand, the Eleventh Circuit's unequivocal statements that the Georgia courts have interpreted the Georgia long-arm statute to reach to the constitutional limit and, on the other hand, the facts of the *O.N. Jonas* case which, given the Georgia Supreme Court's rationale, are impossible to distinguish from the facts before the Court.

The Court concludes that the Eleventh Circuit's statements that transacting business under the statute is interpreted to mean constitutional minimum contacts is dicta not binding on this Court. In *Gold Kist,* the holding of the Eleventh Circuit Court was consistent with *O.N. Jonas* without the need to look beyond the rationale of

the Georgia Supreme Court to the Due Process clause. In *Southwire Co. v. Trans-World Metals & Company, Ltd.,* 735 F.2d 440 (11th Cir.1984), the nonresident defendants shipped scrap metal *into* Georgia. Thus, consistently with the Georgia Supreme Court's holding in *J.C. Penney,* the court of appeals found that the defendant's were transacting business in Georgia. The court's bald statement that the statute extends to the limits of procedural due process was unnecessary as the defendant's had introduced goods into the stream of Georgia commerce.

Moreover, the Georgia Supreme Court has reinforced the boundary of the transacting business prong of the long-arm statute that stops short of the boundary of constitutional minimum contacts. Following the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in which the Supreme Court reaffirmed that the concept of minimum contacts involves not only reasonableness to the defendant, but comity between state sovereigns, the Georgia Supreme Court decided *Wise v. State Board for Examination, Qualification & Registration of Architects,* 247 Ga. 206, 274 S.E.2d 544 (1981). In *Wise,* the supreme court held that the National Council of Architectural Registration Boards ("NCARB") was not transacting business under the long-arm statute even though one of its directors was a resident of Georgia, the board prepared exams that were given to architectural applicants in Georgia, it regulated the practice of architecture nationally, and members of the board lobbied the Georgia legislature in conjunction with proposed NCARB guidelines for granting reciprocal registration. The plaintiff could not sue the NCARB in Georgia over their refusal to grant him reciprocal registration. Notably, the supreme court quoted the plaintiff as urging that the defendant had "minimum contacts with [the] state," but added to this standard, "[as] required by the [long-arm] statute." *Id.* at 209, 274 S.E.2d 544. The court did not say, "as required by constitutional due process." Moreover,

the supreme court cited *O.N. Jonas* in support of its holding, indicating the continued vitality of that opinion.

Professor Ellington has suggested that the *Wise* case and another Georgia appellate court case, *Coopers & Lybrand v. Cocklereece,* 157 Ga.App. 240, 276 S.E.2d 845 (1981), indicate that the *World Wide Volkswagen* case has had an effect on the Georgia courts' interpretation of the long-arm statute.

> Taken together, *Wise* and *Coopers & Lybrand* show the first impact of *World-Wide Volkswagen* on the exercise of jurisdiction over nonresidents under the Georgia long-arm statute. It seems that the former willingness of Georgia appellate courts to reach to the farthest limits permitted by due process may have been chilled.

Ellington & Gary, *Annual Survey of Georgia Law—Trial Practice,* 33 Mercer L.Rev. 275, 283 (1981). Whether the Georgia courts are pulling back, or whether the statutory boundary has always been short of the constitutional boundary in "transacting business" cases, this Court finds that the Georgia Supreme Court would not exercise personal jurisdiction over the defendant in this case.

ACCORDINGLY, the defendant's motion to dismiss is GRANTED.