**Warren D. EVANS, Commissioner of Insurance of the State of Georgia and Rehabilitator of Stone Mountain Insurance Company, a Georgia corporation, Plaintiff,**

v.

**AMERICAN SURPLUS UNDERWRITERS CORPORATION, a Texas corporation, Defendant.**

Civ. A. No. 89–CV–187–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 12, 1989.

**1528**

Andrew J. Ekonomou, Howell Alexander Hall, Atlanta, Ga., for plaintiff.

William Thomas Clark, Robert Charles Semler, Webb, Carlock, Copeland, Semler & Stair, Atlanta, Ga., for defendant.

## ORDER OF COURT

CAMP, District Judge.

Presently before this Court is defendant's Motion to Dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), improper venue under 28 U.S.C. § 1391, and failure to join indispensable parties under Fed.R.Civ.P. 19. For the reasons detailed below, defendant's Motion is DENIED.

### I. FACTS

The following facts are undisputed: Plaintiff filed this action in his capacity as statutory Rehabilitator of Stone Mountain Insurance Company ("Stone Mountain"), seeking to recover damages for breach of contract and fiduciary duty from defendant American Surplus Underwriters Corporation ("ASU"), a former managing, general insurance agent of Stone Mountain.

Stone Mountain is a Georgia domestic and casualty insurer in receivership since July 26, 1988. Plaintiff, Warren D. Evans, Commissioner of Insurance of the State of Georgia, was appointed Rehabilitator of Stone Mountain. ASU is a Texas corporation whose only business office is located in Houston, Texas. Ladd Affidavit, ¶ 2.

ASU does not maintain an office in the state of Georgia, maintains no banking accounts in the state of Georgia, and has no assets in the state of Georgia. *Id.* at ¶ 6.

An agency relationship existed between ASU and Stone Mountain. Ladd Affidavit, ¶ 3. Pursuant to the agency agreement, ASU solicited and issued insurance contracts underwritten by Stone Mountain and collected premiums on these insurance contracts. *Id.* at ¶ 4. One of the agreements at issue was executed February 3, 1988. *Id.* at ¶ 3. ASU received premium payments from insureds at its Houston, Texas office. *Id.* at ¶ 4. ASU deposited the premium payments into a Texas trust account. *Id.* ASU mailed reports and reconciliation statements to Stone Mountain from its Houston, Texas office. *Id.* From July, 1987, through 1988, Stone Mountain employees and ASU employees had several telephone conversations concerning their agency relationship. Volk Affidavit, ¶ 10.

On December 9, 1988, ASU filed a Plea In Intervention in litigation pending in the District Court of Harris County, Texas, 125th Judicial District, involving *South Main Bank v. Geoffrey Bailey, Inc.,* Case # 88–46995. ASU interpleaded into the court's registry a res, monies in the amount of $264,395.00, that ASU claims is all of the funds in its possession allegedly owed to Stone Mountain. Ladd Affidavit at ¶ 5.

The pivotal issue involved in the Court's consideration of defendant's lack of personal jurisdiction argument is defendant's contacts with the state of Georgia that relate to the contracts involved in this action.[1] The parties appear in agreement that contact existed by mail and telephone between defendant ASU and Stone Mountain.

Unfortunately, the parties do not agree on some of the crucial facts. The affidavits submitted by the parties are in conflict as to whether defendant's agents visited the state of Georgia to personally discuss contract terms, and alternatively, if they did appear, whether any negotiations con-

---

**1.** *See e.g., Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

cerning the terms and conditions of the agency agreement occurred. Furthermore, the parties disagree as to the number of insureds in the Northern District of Georgia that ASU issued and bound insurance coverage to under the terms of the Stone Mountain agency agreement. The parties also disagree as to whether defendant actively solicited these Georgia policies.

The affidavit of Gene Ladd ("Ladd"), President of ASU, asserts in Paragraph 3:

There were no personal meetings between ASU representatives and Stone Mountain representatives in the state of Georgia discussing the terms of the agreement.

Ladd's affidavit does not give specific details of how or why defendant entered into dealings with Stone Mountain other than his assertion in Paragraph 3:

The agency agreement between Stone Mountain and ASU was signed by me for ASU on February 3, 1988, at our office in Texas. An agreement was sent to ASU in Texas, some changes were made and returned to Stone Mountain. The agreement was then mailed to ASU and signed by me in Texas.

In contrast, the affidavit of Lawrence F. Volk, Jr. ("Volk"), Treasurer of Stone Mountain, asserts in Paragraph 5:

Mr. Gene Ladd, President of ASU, personally visited Stone Mountain's Marietta office during 1987 on at least two occasions prior to execution of the written agreement in order to negotiate its terms and conditions. Such negotiation took place at the Marietta offices of Stone Mountain.

Furthermore, Volk asserts in Paragraph 6:

The automobile program that was written through ASU and Bailey was based upon an oral agreement between ASU and Stone Mountain which was not reduced to writing. During the month of February, March, or April, 1988, Mr. Gene Ladd personally visited the Marietta office of Stone Mountain on at least one occasion in order to discuss the terms and conditions of the automobile program and to induce Stone Mountain to accept the program.

ASU and Stone Mountain also disagree as to the number of insureds in the Northern District of Georgia that ASU issued coverage to pursuant to the Stone Mountain agreement. Volk asserts in Paragraph 7 of his affidavit:

Pursuant to the terms of the agency agreement, ASU issued and bound insurance coverage underwritten by Stone Mountain to in excess of fifteen insureds in the Northern District of Georgia.

ASU argues that only eight of the policies were written or produced under the subject agency agreement. ASU further contends that no evidence exists indicating that ASU solicited any of those eight insureds. Thus, ASU argues that their involvement with the eight Georgia insureds consisted of nothing more than receiving the insureds mailed, premium payments.

## II. CONCLUSIONS OF LAW

### A. Standard for Granting a Motion to Dismiss

The standard for granting a motion to dismiss for lack of personal jurisdiction made near the institution of litigation and before substantial discovery, is clearly established in this circuit. A motion to dismiss for lack of personal jurisdiction "should be denied if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hospital Corporation of America, Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing, *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103 (11th Cir.1982)). Further, for purposes of a motion to dismiss, plaintiff's allegations must be accepted as true and all conflicts in the facts must be resolved in favor of plaintiff for purposes of determining whether a *prima facie* case of personal jurisdiction has been established. *See, Black v. Acme Markets, Inc.,* 564 F.2d 681, 683, n. 3 (5th Cir.1977).

### B. Requirements for the Exercise of Personal Jurisdiction

It is well established that the exercise of personal jurisdiction in diversity

cases such as this one requires satisfaction of both the due process clause of the United States Constitution and the Georgia long-arm statute. *E.g., National Egg Company v. Bank Leumi/Le–Israel B.M.,* 504 F.Supp. 305, 309–10 (N.D.Ga.1980). Decisions in both the Georgia state courts and the federal courts indicate that an unresolved question exists as to whether the requirements of the Georgia long-arm statute are co-extensive with the requirements of the due process clause. Therefore, the Court will first address the issue of whether the plaintiff has asserted a *prima facie* case for the exercise of personal jurisdiction under the due process clause.

## 1. REQUIREMENTS OF CONSTITUTIONAL DUE PROCESS

The Supreme Court of the United States has repeatedly attempted to articulate the requirements of the due process clause of the United States Constitution as it concerns the exercise of personal jurisdiction over nonresident defendants in state court actions and diversity actions in federal court. To appropriately analyze the proper exercise of personal jurisdiction over a nonresident defendant, the Court must distinguish between general personal jurisdiction and specific personal jurisdiction. "General personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party had 'continuous and systematic' general business contacts with the forum state." *Delong Equipment Company v. Washington Mills Abrasive Co.,* 840 F.2d 843, 853 (11th Cir.1988) (quoting *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). If a defendant business is found to have the requisite continuous and systematic general business contacts with the forum, then it is amenable to suit in that forum even if plaintiff's cause of action does not stem from or relate directly to defendant's contacts. *See, Helicopteros Nacionales de Columbia S.A. v. Hall, et al.,* 466 U.S. 408, 414–16, n. 8, 104 S.Ct. 1868, 1872–73, n. 8, 80 L.Ed.2d 404 (1984).

With specific jurisdiction, however, the nature of defendant's contacts with the state are such that it may only be held liable for causes of action stemming from a particular activity. The cause of action arises directly out of, or is directly related to, defendant's contacts with the forum. *Id.* at 414, n. 8, 104 S.Ct. at 1872, n. 8. The facts are insufficient in the case at bar to indicate that ASU had continuous and systematic contacts with Georgia. Therefore, if this Court has jurisdiction, it must be premised on specific personal jurisdiction. The test for determining specific personal jurisdiction is the two-pronged minimum contact analysis announced in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and refined in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

## 2. REQUIREMENTS OF CONSTITUTIONAL DUE PROCESS FOR THE EXERCISE OF SPECIFIC PERSONAL JURISDICTION

The constitutional inquiry begins and ends with the question posed by the Supreme Court in *International Shoe,* 326 U.S. 310, 66 S.Ct. 154; does defendant have such minimum contacts with the forum so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). Forty years later, in *Burger King,* 471 U.S. 462, 105 S.Ct. 2174, the Supreme Court told us how to apply the dictates of *International Shoe.* The Court in *Burger King* articulated a two-pronged test for exercising personal jurisdiction: First, "the constitutional touchstone, ... whether the defendant purposefully established 'minimum contacts' in the forum states;" *Id.* at 474, 105 S.Ct. at 2183, and second, "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* at 476, 105 S.Ct. at 2184 (quoting *International Shoe* at 320, 66 S.Ct. at 160).

To satisfy the first prong and determine whether there was contact between defendant and the forum, the *Burger King* court looked to two independent factors: foreseeability and purposeful availment. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct in connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp., et al v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The "purposeful availment" requirement, however, seeks to insure that a nonresident "defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Burger King* at 475, 105 S.Ct. at 2183 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen* at 299, 100 S.Ct. at 568). Purposeful availment will be found if defendant injects itself into the forum and "purposefully directs his activities toward forum residents." *Burger King* at 473, 105 S.Ct. at 2182.

To satisfy the reasonableness prong, i.e., to determine whether the exercise of jurisdiction will comport with "traditional notions of fair play and substantial justice", the *Burger King* court deferred to the five factors it previously considered in *World–Wide Volkswagen:*

1. "The burden on the defendant."
2. "The forum state's interest in adjudicating the dispute."
3. "The plaintiff's interest in obtaining convenient and effective relief."
4. "The interstate judicial system's interest in obtaining the most efficient resolution of controversies."
5. "The shared interest of the several states in furthering fundamental substantive social policies."

*World–Wide Volkswagen* at 292, 100 S.Ct. at 564 (*cited by Burger King* at 477, 105 S.Ct. at 2184–85). The two prongs of the *Burger King* test, minimum contacts and

fairness, are designed to work together to establish or deny jurisdiction. A strong showing of either can compensate for a lesser showing of the other. For example, the five fairness factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King* at 477, 105 S.Ct. at 2184. Conversely, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

### 3. APPLYING THE REQUIREMENTS

This Court's exercise of personal jurisdiction over ASU comports with the dictates of *International Shoe* and its progeny. Accepting plaintiff's allegations as true, the Court finds that plaintiff has alleged sufficient facts to support a reasonable inference that this Court can exercise specific personal jurisdiction over ASU. *See Jackam v. Hospital Corporation of America, Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing, *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103 (11th Cir.1982)). Weighing the totality of circumstances, the Court finds that plaintiff has presented a *prima facie* case for the exercise of specific personal jurisdiction over defendant. Plaintiff alleges that defendant had numerous contacts with this forum and that plaintiff's cause of action arose directly from defendant's actions in this forum. Specifically, this Court relies on three contacts that plaintiff alleges defendant had with the forum to establish specific personal jurisdiction.

Plaintiff first submitted evidence to contest defendant's assertion that no agent or employee of defendant ever entered Georgia to discuss the agreements in question. Volk Affidavit, ¶ 5. Plaintiff contends that defendant's employees visited Stone Mountain's office in Marietta, Georgia on more than one occasion. Defendant appears to argue, alternatively, that even if an agent or employee did enter the state of Georgia and come to Stone Mountain's office, no

negotiations concerning the terms and conditions of the two agency agreements in question occurred. Defendant contends that Stone Mountain simply told defendant what the terms of the agreements would be, and the new agreements were nothing more than a repackaging of a previous agency agreement entered into by ASU and Stone Mountain's previous owner. The agreement, according to defendant, was subsequently signed by Stone Mountain in Georgia and ASU in Texas. The court, however, finds this argument disingenuous. ASU certainly does not contend that they were forced or defrauded into the agency agreement. ASU's agent clearly had the opportunity at Stone Mountain's office to disagree with the terms and conditions of the contract or to refuse the contract entirely.

ASU availed itself of this forum when it knowingly entered a contractual relationship with a Georgia corporation. As sophisticated businessmen, defendant ASU made a conscious decision to enter into a contract with a business headquartered in this state and a business that ASU knew underwrote the very type of insurance policies for Georgia insureds which ASU had contracted with the business to solicit and issue. There is nothing random or fortuitous about their contacts with this state.

Secondly, ASU President Ladd, as well as other ASU employees, had telephone conversations with Stone Mountain employees from July, 1987, through 1988, regarding the insurance programs in dispute. While this contact with the forum alone would not be sufficient for this court to predicate personal jurisdiction, the telephone calls, coupled with defendant's other contacts, evidences purposeful contact with this forum arising out of defendant's agreements with Stone Mountain.

Thirdly, the Court finds another reason that militates in favor of exercising jurisdiction over defendant ASU. Defendant admits that under the terms of the agency agreement in dispute, ASU issued and bound insurance coverage underwritten by Stone Mountain to at least eight insureds located in the Northern District of Georgia.

ASU received premiums from those insureds and deposited those premiums in a Texas trust account. Thus, defendant ASU was entitled to commissions on these policies it issued to Georgia insureds pursuant to the agency agreement in dispute with Stone Mountain.

While defendant argues that it did not actively solicit these Georgia insureds to enter into an insurance contract, ASU plainly knew that the insureds were located in the state of Georgia, that premiums were mailed from the state of Georgia, yet, ASU made no apparent effort to stop the issuance of these insurance contracts to the Georgia insureds or halt the reception of premiums from the Georgia insureds. The record shows that such insurance contracts were a readily foreseeable part of ASU's agency agreement with Stone Mountain.

Thus, plaintiff's legal cause of action arises from defendant's purposeful contacts in this forum. *Burger King* at 473, 105 S.Ct. at 2182. ASU could reasonably have anticipated being haled into court in Georgia, and ASU cannot now claim surprise that they are being summoned into this forum to meet their obligation. *World–Wide Volkswagen* at 297, 100 S.Ct. at 567. Accordingly, the Court holds that the facts of this case place it within the requirements, as set forth in *Burger King,* for the exercise of personal jurisdiction under the due process clause of the United States Constitution.

### 4. REQUIREMENTS OF THE GEORGIA LONG–ARM STATUTE

■ Plaintiff has asserted that the exercise of personal jurisdiction over defendant is proper under O.C.G.A. § 9–10–91(1). This section provides that a court may exercise personal jurisdiction over a nonresident if defendant "[t]ransacts any business within this state" and the cause of action arises from that transaction of business within the state. The Georgia Supreme Court expanded upon the transacting business section of the Georgia long-arm statute in *Davis Metals v. Allen,* 230 Ga. 623, 198 S.E.2d 285 (1973). The *Davis* court held that "... jurisdiction over a nonresi-

dent exists on the basis of transacting business in this state if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* 230 Ga. at 625, 198 S.E.2d 285.

Until recently no question existed that the Georgia long-arm statute gave Georgia courts in a tort action the power to exercise specific personal jurisdiction over nonresident defendants to the full extent allowed by constitutional due process. *E.g., Coe and Payne Company v. Wood–Mosaic Corp.,* 230 Ga. 58, 60, 195 S.E.2d 399 (1973). However, the Georgia Supreme Court recently held that a telephone conversation during which a nonresident defendant fraudulently induced a Georgia resident to send him money is insufficient to establish personal jurisdiction over the nonresident defendant. *See, Gust v. Flint,* 257 Ga. 129, 356 S.E.2d 513 (1987). That case implicitly overruled prior case law which had held that O.C.G.A. § 9–10–91(2) allowed assertion of personal jurisdiction to the maximum extent permitted by procedural due process. *See Flint v. Gust,* 184 Ga.App. 242, 361 S.E.2d 722 (1987).

The extension of personal jurisdiction over nonresident defendants in contract actions, such as the present one, is dealt with in a different subsection of the Georgia long-arm statute than the extension of personal jurisdiction in tort cases. *E.g. Lutz v. Chrysler Corporation,* 691 F.2d 996, 997 (11th Cir.1982). In *Gold Kist, Inc. v. Baskin–Robbins Ice Cream,* 623 F.2d 375, 378 (5th Cir.1980), the Eleventh Circuit reached the conclusion that the Georgia courts had implicitly interpreted the Georgia long-arm statute as being coextensive with due process in contract actions against nonresident defendants. The court's conclusion in *Gold Kist* appears to contradict prior and subsequent decisions in which the court held that the Georgia long-arm statute's "transacts any business" provision requires greater contacts between defendant and the state than required under the statute's provi-

sions relating to tort claims. *See, Delong Equipment Company v. Washington Mills Abrasive,* 840 F.2d 843, 848 (11th Cir.1988). However, the *Gold Kist* court stated that there was no inconsistency with its previous decisions since the previous cases simply recognized that *constitutional due process* requires greater contacts between defendant and forum for the exercise of personal jurisdiction in contract cases than in tort cases. *Gold Kist,* 623 F.2d at 378.

On the other hand, in *Irving Commercial Corp. v. Sound Floor Coverings,* 595 F.Supp. 536 (N.D.Ga.1984), the District Court declined to follow the *Gold Kist* opinion to the extent that it extended the Georgia long-arm statute to the limits of constitutional due process in contract actions. The District Court found that it was not bound by the *Gold Kist* court's statement of the law since it was merely dicta, unnecessary in rendering the decision. *Id.* at 540–41.

■ Historically, in contract actions, the Georgia courts have interpreted the Georgia long-arm statute as requiring something more than constitutional due process. *Irving Commercial Corp. v. Sound Floor Coverings,* 595 F.Supp. 536, 538–39 (N.D.Ga.1984) (citing *O.N. Jonas Company, Inc. v. B & P Sales Corp.,* 232 Ga. 256, 206 S.E.2d 437 (1974); *Wise v. State Board for Examination, Qualification and Registration of Architects,* 247 Ga. 206, 274 S.E.2d 544 (1981)). Given the Georgia court's historical interpretation of the long-arm statute and the Georgia Supreme Court's recent decision in *Flint,* 257 Ga. at 129, 356 S.E.2d 513, which implicitly requires something more than constitutional due process for a court to exercise personal jurisdiction over a nonresident defendant in a tort action, this Court finds that the Georgia long-arm statute, specifically O.C.G.A. § 9–10–91(1), is narrower than constitutional due process and thus requires more contacts with the forum than constitutional due process.

It is difficult to articulate a standard for determining what it is to "transact busi-

ness" in Georgia based on the divergent decisions. Courts seem to consider a totality of circumstances and make case by case, fact specific decisions in personal jurisdiction determinations in contract actions. *See, Algemene Bank Nederland, M.V. v. Mattox,* 611 F.Supp. 144 (N.D.Ga.1985). In the case at bar, the Court finds that the totality of circumstances weigh in favor of exercising personal jurisdiction over defendant. Accepting plaintiff's allegations as true and resolving all fact conflicts in favor of plaintiff, as the Court is required, the Court finds that defendant entered the state of Georgia and discussed terms and conditions of the contracts in dispute with Stone Mountain. The Court further finds that defendant did issue insurance contracts to insureds residing in the Northern District of Georgia, pursuant to the disputed agreement with Stone Mountain, and defendant ASU did receive premiums from these Georgia insureds. Accordingly, the Court finds that defendant's contacts with Georgia satisfy the Georgia long-arm statute, specifically O.C.G.A. § 9–10–91(1), so that this Court can exercise personal jurisdiction over ASU.

### C. Requisites for Subject Matter Jurisdiction

■■■■ Defendant argues that pursuant to the doctrine of prior exclusive jurisdiction, this Court lacks subject matter jurisdiction in this action. Under the doctrine of prior exclusive jurisdiction, a federal court should decline jurisdiction where a state court has first assumed proper jurisdiction of a suit that is essentially in rem with competing claims to a res. *Penn General Cas. Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1934). Thus, this doctrine is limited to conflicts between two simultaneous in rem proceedings concerning the identical res. However, if one of the actions is in personam, even though adjudicating, without physically controlling a right to the res, this conflict does not exist and a federal court can properly assume concurrent jurisdiction. *1A, Pt. 2, Moore's Federal Practice,* ¶ 0.214[1987]. Plaintiff argues that the prior exclusive jurisdiction doctrine is

inapplicable since the action in this Court is in personam.

The state court proceeding at issue is a Texas state court suit among litigants who are not parties to this action. On December 9, 1988, ASU filed a plea in intervention in that litigation, seeking the interpleader of a res, monies in the amount of $264,-395.00. ASU claims that this money is all of the funds in its possession that it allegedly owes to Stone Mountain. This Court, therefore, must determine whether the Texas state court action and this federal court action are both essentially in rem proceedings that demand the control of the res. Illustrative of an in rem action and application of the principle of prior exclusive jurisdiction are suits where to give effect to the jurisdiction the court *must* control the property. *U.S. v. Bank of New York and Trust Co.,* 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1935) (emphasis added). In the case at bar, plaintiff asserts claims for breach of contract and breach of fiduciary duty arising out of the agency relationship between defendant ASU and Stone Mountain. Plaintiff seeks recovery of $1,761,619.63 arising out of two separate and distinct insurance programs of ASU underwritten by Stone Mountain.

The action filed in this Court is a suit in personam to determine defendant's liability to Stone Mountain for breach of contract and fiduciary duty. The fact that ASU interpleaded a certain dollar amount in a Texas state court that ASU claims is all of the funds in its possession allegedly owed Stone Mountain does not transform the action in this federal court into an in rem proceeding. The case at bar is merely an action to establish damages for breach of contract and fiduciary duty; and thus, this Court may obtain an adjudication without disturbing the control of the state court. The object of this action is not to take control of the property from the state court, but simply to determine defendant's alleged liability to plaintiff. Accordingly, this Court has subject matter jurisdiction of plaintiff's claim against defendant.

## D. Venue

Pursuant to 28 U.S.C. § 1391(c), this Court finds that since defendant is a corporation and subject to personal jurisdiction of this Court, venue is proper in the Northern District of Georgia.

## E. Failure to Join

 Finally, defendant argues that plaintiff has failed to join and is incapable of joining numerous, indispensable parties under Fed.R.Civ.P. 19. Specifically, defendant argues that it is necessary to join the numerous policy holders of insurance policies issued by defendant on behalf of Stone Mountain, a risk retention purchasing group and its members to whom defendant issued policies on behalf of Stone Mountain, and the Insurance Commissioners of the states where each of the policy holders reside in order to avoid multiple claims to the funds Stone Mountain seeks. The Court must determine whether the absentees are "needed for [a] just adjudication." Fed.R.Civ.P. 19. When nonjoinder may leave any parties already in the lawsuit subject to a substantial risk of "incurring double, multiple, or otherwise inconsistent obligations by reason of the [absentees] claimed interest" joinder should occur. Fed.R.Civ.P. 19(a)(2)(ii). The Court finds that defendant's claims of multiple exposure are purely speculative, and a substantial risk of incurring multiple, inconsistent obligations as a result of absentees' alleged interest does not exist. Claims for unearned premiums, if alleged, can be made to the Georgia rehabilitator in the pending Fulton County Superior Court rehabilitation proceeding. O.C.G.A. § 33–37–1 *et seq.* Accordingly, plaintiff has not failed to join necessary parties.

In conclusion, defendant's Motion to Dismiss is DENIED. The record shows that subject matter jurisdiction, personal jurisdiction, and venue are all proper in the Northern District of Georgia.

SO ORDERED.