John C. PENNINGTON, Trustee of the Estates of Balasco Industries, Inc., No. 74396, et al., etc., Plaintiffs-Appellants,

v.

TOYOMENKA, INC., Defendant-Appellee.

No. 75–1178

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 14, 1975.

Rehearing Denied June 23, 1975.

* Rule 18, 5 Cir., See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Ben F. Johnson, III, Atlanta, Ga., for plaintiffs-appellants.

E. Lee Redfern, Rex M. Lamb, III, Atlanta, Ga., for defendant-appellee.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

PER CURIAM:

The sole question presented in this appeal is whether the District Court correctly held that defendant-appellee was not "doing business" in Georgia, which resulted in the dismissal of appellant's action for lack of personal jurisdiction.

Appellant, the Trustee in Bankruptcy for the estates of three bankrupt corporations, filed the instant action in the Northern District of Georgia, alleging preferential transfers by the bankrupts to Toyomenka in the amount of $99,524. Process was served on Toyomenka, a New York corporation, at its New York address under the Georgia Long Arm Statute, Georgia Code §§ 24–113.1—24–118.

Toyomenka answered, denying that it had transacted any business within Georgia such as to enable service under the Georgia Long Arm Statute,[1] and then filed a motion to dismiss. The District Court granted this motion to dismiss, and it is from this judgment that appellant now appeals.

There have been no allegations that would make sub-sections (b), (c), or (d) of Georgia's Long Arm Statute applicable. Consequently, the sole question involved

---

1. Georgia Long Arm Statute.

24–113.1. *Personal jurisdiction over nonresidents of State.*—A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

(a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; or

(d) Owns, uses or possesses any real property situated within this State.

is whether or not Toyomenka has, under the Georgia definition, "transacted business" within Georgia, and thereby conferred *in personam* jurisdiction on that state's courts.

The evidence established that Toyomenka transmitted communications from New York to Georgia by means of telephone and mail. It sent goods into Georgia, and was paid by checks drawn on Atlanta banks. However, Toyomenka has never had an agent or employee located in Georgia, has never manufactured any product in Georgia, and has never been domesticated or authorized to conduct business in Georgia.

It appears that the District Judge has accurately interpreted Georgia law. In Coe & Payne Company v. Wood-Mosaic Corporation, 125 Ga.App. 845, 189 S.E.2d 459 (1972), reversed on other grounds, 230 Ga. 58, 195 S.E.2d 399 (1973), jurisdiction over two non-resident corporations was asserted under sub-sections (a) and (c) of the Georgia Long Arm Statute. In considering jurisdiction under sub-section (a), the Georgia Court of Appeals noted:

"We would point out that it (transacting business) would seem to encompass more than mail orders which require acceptance in a nonresident state. Furthermore, transacting business would not be involved where the sole local performance was delivery of items ordered to this state."

Also relevant is J. C. Penney Company v. Malouf, 230 Ga. 140, 196 S.E.2d 145 (1973). In that case, Malouf, a foreign corporation, sold merchandise to Penney, which was resold by Penney at retail. When the plaintiffs filed suit against Penney for damages allegedly caused by this merchandise, Penney sought to bring Malouf in as a third party defendant.

In allowing Penney to join Malouf, the Supreme Court of Georgia stated:

"We conclude that the manufacture and shipment of merchandise by Malouf for delivery to Penney in Georgia placed the merchandise in the stream of commerce for resale at retail to Georgia citizens; and placing the merchandise in that stream pursuant to the warranty-indemnity contract previously referred to amounted to 'transacting any business' in Georgia by Malouf under subsection (a) of our Long Arm Statute."

Thus it was only when coupled with a warranty-indemnity contract that the Georgia Supreme Court held that shipping goods into Georgia constituted "transacting business".

Appellant discounts *Penney* by pointing out that on a motion for rehearing, the Court summarized its earlier action as follows:

"We held that by manufacturing merchandise and placing it in the stream of commerce in Georgia, Malouf was doing business in Georgia. In connection with that doing business in Georgia, Malouf entered into a contract with Penney agreeing to hold Penney harmless for any and all expenses and damages arising or resulting from any 'alleged defect' in its merchandise. Penney was sued in Fulton County for an 'alleged defect' in the merchandise. The 'act' causing expenses and damages to Penney occurred when the suit was brought in Fulton County. The bringing of the suit in 1968 in Fulton County against Penney activated the obligations of Malouf to Penney contained in the contract of indemnity." *Penney, supra,* at 149.

Appellant contends that this opinion on rehearing puts the emphasis on placing goods in the stream of commerce.

However, this opinion was written with only the venue question in mind. By saying "We *held* . . .", the Court does not seem to intend to modify its original holding, but merely to refer to it.

Finally, appellant cites Delta Equities, Inc. v. Larwin Mortgage Investors, 133 Ga.App. 382, 211 S.E.2d 9 (1974). The parties agree on the holding in *Delta*. It holds that where a non-resident corporation's agents made two trips into Georgia to negotiate a contract, the "mini-

mum contracts" necessary to constitute "transacting business" were satisfied. Although it was established that Toyomenka sent agents into Georgia to meet with the bankrupts on the accounts at issue, the business had already been consummated.

The judgment of the District Court is Affirmed.