Hugh ROBINSON, Jr., as a Chapter XI Receiver under the Federal Bankruptcy Act, for Sun Motor Lodge, Inc., et al., Plaintiffs,

v.

The RAVENEL COMPANY, INC., and Investment Corporation of America, Defendants.

Civ. A. No. C75–1839A.

United States District Court, N. D. Georgia, Atlanta Division.

March 12, 1976.

John H. Hicks, Hicks & Scroggins, Atlanta, Ga., for plaintiffs.

A. Stephens Clay, Frederick K. Heller, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

This is an action for monetary damages brought by plaintiffs against two defendants, Investment Corporation of America [ICA] and The Ravenel Company, Inc. The instant action was originally filed in the Superior Court of Fulton County, Georgia, and subsequently removed to this Court by ICA on September 23, 1975. The case is presently before the Court on defendant ICA's motion to dismiss for lack of jurisdiction under the Georgia Long-Arm Statute, Ga.Code Ann. § 24–113.1(a).

Defendant ICA engages principally in the business of purchasing real estate mortgage loans secured by income-producing properties. ICA is a Delaware corporation with its principal place of business in Pennsylvania.

Plaintiff Day, Smith and Sun Motor Lodge, Inc. (the partnership) made an application in February 1973 to defendant Ravenel Company for real estate loans in a total amount of $4,000,000. On or about April 11, 1973, defendant ICA allegedly made two commitments to Ravenel to purchase the loans.

Plaintiffs seek to recover broker's fees paid to defendant Ravenel, standby fees and commitment fees paid to ICA, and other damages.

Defendant ICA was served pursuant to the Georgia Long-Arm Statute, Ga. Code Ann. §§ 24–113.1(a), 114. Plaintiffs' contention that ICA is subject to this Court's jurisdiction under the Georgia Long-Arm Statute rests on the allegation that ICA's representatives and agents have transacted business in Georgia on behalf of ICA. This allegation invokes subsection (a) of the Georgia Long-Arm Statute, which authorizes personal jurisdiction over a nonresident "as to a cause of action arising from any of the acts . . . enumerated in this section" if the nonresident "transacts any business within this State." Ga. Code Ann. § 24–113.1(a).

Plaintiffs contend that ICA is subject to in personam jurisdiction inasmuch as ICA sent the commitment letters and amendments thereto to plaintiffs in Georgia, and said letters were executed and became effective in Georgia; ICA negotiated checks drawn on a Georgia bank; ICA engaged an Atlanta law firm to represent it in the purchasing of the loans; the loans to be purchased are to be made to Georgia citizens on Georgia land; and ICA sent letters to Georgia citizens.

ICA claims that it is not subject to the in personam jurisdiction of this Court, or the state court from which the instant action was removed, under subsection (a) of the Georgia Long-Arm Statute inasmuch as ICA has not purposefully done any act or consummated any transaction in the State of Georgia, and inasmuch as plaintiffs' cause of action does not arise from and is not connected with any act or transaction consummated in the State of Georgia.

In *Davis Metals, Inc. v. Allen,* 230 Ga. 623, 198 S.E.2d 285 (1973), the Georgia Supreme Court construed subsection (a) of the Georgia Long-Arm Statute and set forth a three-point test for determining the existence of jurisdiction. The Georgia Supreme Court held:

"Under our Long Arm Statute jurisdiction over a nonresident exists on the basis of transacting business in this state [(1)] if the nonresident has purposefully done some act or consummated some transaction in this state, [(2)] if the cause of action arises from or is connected with such act or transaction, and [(3)] if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." 230 Ga. at 625, 198 S.E.2d at 287 [numbers added].

The question presented to the Court, therefore, is the following: Did ICA transact business in the State of Georgia

and, if so, does the plaintiffs' cause of action arise out of such transactions?

In support of its motion to dismiss, ICA has submitted the affidavit of Richard J. Micheel, President of ICA. The ICA affidavit avers that ICA is a Delaware corporation with its principal office in Pennsylvania and has never maintained any office in Georgia; has never been domesticated or authorized to conduct business in Georgia; has never had a registered agent designated for service of process or agent upon whom service could be perfected in Georgia; has never purchased any loans in Georgia and does not own any real property or maintain any bank accounts or other property in Georgia; did not solicit the business of any of the plaintiffs or defendant Ravenel; and did not visit, view, or inspect the real property or improvements referred to in the Complaint. These assertions are uncontroverted. The affidavit further states that no agent or representative of ICA ever conferred or negotiated in Georgia with plaintiffs or defendant Ravenel; and that all communications by ICA to any of the plaintiffs originated in Pennsylvania.

Nevertheless, plaintiffs contend that ICA was transacting business in Georgia and that the instant cause of action arises out of such transactions. In support of this contention plaintiffs note several "transactions of business" by ICA in Georgia, three of which are supported by evidence and worthy of the Court's consideration: (1) the commitment letters and amendments thereto; (2) the checks drawn on a Georgia bank; and (3) the hiring of an Atlanta law firm to provide legal assistance.

*The commitment letters and amendments.*

Plaintiffs insist that the commitment letters, which allegedly created two commitment contracts, signed in Georgia, became effective in Georgia, and are to be interpreted according to Georgia law, and that this constitutes "transacting business" in Georgia. The letters which plaintiffs contend were executed and be-

came effective in Georgia are the commitment letters from ICA addressed to defendant Ravenel dated April 11, 1973, and the amendment letters dated April 16, 1973.

ICA prepared and signed the commitment letters in Pennsylvania and mailed them from Pennsylvania. ICA did not prepare or send the amendment letters to be signed. ICA received the amendment letters by mail at its offices in Pennsylvania on or about April 20, 1973. The amendment letters contained the signature of plaintiff Lon L. Day, Jr., when ICA received them along with the commitment letters, also signed by defendant Day, and the required fees in the nature of checks drawn on a Georgia bank. ICA then signed the amendment letters in Pennsylvania, negotiated the checks in Pennsylvania, and returned by mail copies of the commitment and amendment letters as signed.

The commitment letters constituted offers to purchase loans which could allegedly be accepted by plaintiffs by signing and returning a copy to ICA with the required standby fee. The amendment letters, signed by plaintiff Day, which ICA received along with the signed commitment letters, constituted a counteroffer. *Estes Lumber Co. v. Palmyra Yellow Pine Co.,* 29 Ga.App. 15, 113 S.E. 821 (1922). By signing the amendment letters and negotiating the checks in Pennsylvania, ICA accepted the counteroffer in Pennsylvania.

█ The question becomes: Are the commitment letters Georgia contracts or Pennsylvania contracts? This Court is bound to apply the conflict of laws rules of the State of Georgia. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Van Dusen v. Barrack,* 376 U.S. 612, 628, 84 S.Ct. 805, 815, 11 L.Ed.2d 945 (1964). Georgia adopts the law of the place of making with respect to matters of contract interpretation, but considers the place of making as where the contract is delivered, not where it is executed. *Pink v. AAA Highway Express, Inc.,* 191 Ga. 502, 13 S.E.2d 337 (1941),

*aff'd,* 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941); *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701, 703–04 (5th Cir. 1967). In addition, the Georgia rule is that a Georgia contract is effective where the last act essential to completion of the contract is done. *Peretzman v. Borochoff,* 58 Ga.App. 838, 842–43, 200 S.E. 331 (1938).

■ Under both tests, any contract arising from the commitment and amendment letters is a Pennsylvania contract. The signed commitment letters and checks were delivered to ICA in Pennsylvania. The addition of the amendment letters signed by plaintiff Day represent a counteroffer. ICA's execution of the counteroffer in Pennsylvania consummated the entire bargain. ICA's execution of the amendment letters and negotiation of the checks were the last acts essential to completion of the contract.

Consequently, neither the commitment nor amendment letters constitute contracts which were executed and became effective in Georgia, as plaintiffs contend. Thus, plaintiffs' contention that the commitment and amendment letters constitute Georgia contracts which support jurisdiction pursuant to the Long-Arm Statute is erroneous. See *Unistrut Georgia, Inc. v. Faulkner Plastics, Inc.,* 135 Ga.App. 305, 217 S.E.2d 611 (1975).

*Negotiation of checks drawn on a Georgia bank.*

■ ICA both received and negotiated the checks in question in Pennsylvania. Plaintiffs, not ICA, drew the checks on a Georgia bank. Plaintiffs have presented no authority construing any extraterritorial service statute, to support their contention that the negotiation of checks outside the state provides any basis for personal jurisdiction, in the state where the checks were drawn, over the nonresident defendant negotiating the checks. ICA's negotiation of the checks does not subject it to personal jurisdiction pursuant to the Long-Arm Statute. See *Pennington v. Toyomenka,* 512 F.2d 1291 (5th Cir. 1975).

*Employing a law firm in Atlanta.*

ICA avers, by affidavit of Richard J. Micheel, that Powell, Goldstein, Frazer & Murphy, an Atlanta law firm, was employed solely to review, in light of Georgia law, the loan documents provided by attorneys for the borrower and to submit comments to ICA. ICA contends that the law firm was not employed to represent ICA in any other capacity and that the firm never forwarded any comments or documents to any of plaintiffs or their representatives.

Plaintiffs, on the other hand, aver, by affidavit of Robert Croft Young, an attorney who represented the plaintiff partnership in the matters in question, that plaintiffs' attorney participated in negotiations, dealings, and conferences with Powell, Goldstein, Frazer & Murphy pertaining to the closing of the loans to be purchased by ICA. Plaintiffs claim that Powell, Goldstein, Frazer & Murphy was an agent of ICA acting in Georgia. Moreover, plaintiffs contend that ICA's act of employing the law firm constitutes the "transacting of business" in Georgia required by the Georgia Long-Arm Statute.

■ It appears from an examination of the written communications between the parties in the instant action that the Atlanta law firm was employed for the purpose of reviewing the documentation provided by the plaintiffs, required by the commitment letters as a condition to closing the loans, and to advise ICA as to the acceptability of such documentation. It further appears that plaintiffs were directed by ICA to work with the Atlanta law firm in meeting the documentation conditions and did, in fact, have several such contacts with the law firm over a period of about ten days.

Nevertheless, the Atlanta law firm did not at all participate in negotiations, conferences, or dealings regarding the terms and provisions of the contracts. Nor was the law firm an essential ingredient to the parties' course of conduct under the contracts. The contracts were between the parties; the law firm merely reviewed documents and advised ICA

as to the acceptability of the documents under Georgia law and under the terms of the commitment letters. Such actions by ICA cannot be construed as "transacting any business" under the Georgia Long-Arm Statute or as constitutionally supporting the exercise of in personam jurisdiction over a foreign corporation. See *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir. 1974), for a discussion of the constitutional requirements of long-arm jurisdiction.

Furthermore, to permit the exercise of personal jurisdiction over ICA under subsection (a) of the Georgia Long-Arm Statute, plaintiffs' cause of action must arise from the very transaction of business which forms the basis for personal jurisdiction. See *Davis Metals v. Allen, supra.*

Plaintiffs' cause of action arises from the alleged breach of the contracts created by the commitment and amendment letters which were signed in April 1973. Respecting this action, ICA did not engage the services of Powell, Goldstein, Frazer & Murphy until early May 1974. Any functions performed by the law firm, therefore, occurred after the execution and delivery of the commitment and amendment letters. Moreover, the law firm is not the breaching party against whom the cause of action is asserted. The activities of the law firm are not "transactions of business" from which plaintiffs' cause of action arises.

Plaintiffs have presented no cases which subject a nonresident defendant to jurisdiction under subsection (a) of the Georgia Long-Arm Statute because of the defendant's actions after the creation of the contract which gives rise to the resident plaintiffs' claim.

Plaintiffs rely on *Delta Equities, Inc. v. Larwin Mortgage Investors,* 133 Ga. App. 382, 211 S.E.2d 9 (1974), where the nonresident defendant, subjected to the jurisdiction of the court, had employed a law firm in Atlanta. However, the court in *Delta Equities, Inc.,* relied upon a multiplicity of contacts that the nonresident defendant had with Georgia, including several visits to Georgia by agents of the nonresident defendant to negotiate the agreement.

Moreover, it is significant that the Atlanta law firm was engaged prior to the closing of the agreement which gave rise to the cause of action in *Delta Equities, Inc.* The court in *Pennington v. Toyomenka, supra,* similarly distinguished *Delta Equities* stating the following:

"*[Delta Equities]* . . . holds that where a non-resident corporation's agents made two trips into Georgia to negotiate a contract, the 'minimum contacts' [sic] necessary to constitute 'transacting business' were satisfied. Although it was established that Toyomenka sent agents into Georgia to meet with the bankrupts on the accounts at issue, *the business had already been consummated.*" 512 F.2d at 1293–94 (emphasis added)

The Georgia attorneys employed by ICA did not participate in any way in creating the contractual rights and obligations embodied by the commitment and amendment letters which give rise to the instant cause of action. In *Pennington v. Toyomenka, supra,* the fact that Toyomenka sent agents into Georgia to discuss the accounts at issue was not sufficient to confer personal jurisdiction over the nonresident defendants. ICA's action employing an Atlanta law firm to provide advice under Georgia law regarding the alleged contractual conditions already created, even assuming arguendo that the Atlanta-based law firm had direct dealings with plaintiffs, is not sufficient to subject ICA to the Court's jurisdiction.

Plaintiffs further rely on *Product Promotions, Inc. v. Cousteau, supra,* in which the Court maintained long-arm jurisdiction in Texas as to one foreign defendant. However, in *Product Promotions, Inc.,* the Court relied heavily on the fact that the contract was partially performed in Texas. In the case at bar there are no allegations of such partial performance in Georgia.

Although "the trend of the opinions is to construe long-arm 'transacting any business' statutes most liberally and to

uphold the jurisdiction of the court of the plaintiff's residence in actions arising, either directly or indirectly, out of such transactions," *Davis Metals, Inc. v. Allen, supra,* at 626, 198 S.E.2d at 287, the requisite minimum contacts must be present to subject a nonresident defendant to the Court's jurisdiction.

The evidence presented by plaintiffs show that the only contacts ICA had with the State of Georgia, with respect to the phrase "transacts any business within this state," as interpreted in *Davis Metals, Inc. v. Allen, supra,* were the transmittal of communications from Pennsylvania to Georgia by mail, the negotiation of checks in Pennsylvania drawn on a Georgia bank, and the employing of a Georgia law firm for legal advice subsequent to the creation of the alleged contracts. These "contacts" with the State of Georgia are insufficient to meet the requirement of transacting "any business within this state" under subsection (a) of the Georgia Long-Arm Statute. See *O. N. Jonas Co., Inc. v. B&P Sales Corp.,* 232 Ga. 256, 206 S.E.2d 437 (1974) (visits by nonresident defendant's agents to plaintiff's plant in Georgia which allegedly eventually resulted in purchases, plus shipment of the goods from Georgia, not sufficient "contacts"); *Fulghum Industries, Inc. v. Walterboro Forest Products, Inc.,* 477 F.2d 910 (5th Cir. 1973) (visits to Georgia by non-resident defendant's officers as part of negotiations for contract, which was executed by parties in their respective states, not sufficient "contacts"); *Pennington v. Toyomenka, Inc., supra* (transmittal of communications from New York to Georgia by means of telephone and mail, sending goods into Georgia, negotiation of checks drawn on a Georgia bank, and visits to Georgia by nonresident defendant's agents after consummation of agreement, not sufficient "contacts"); see also *Green and White Construction Co. v. Columbus Asphalt Corp.,* 293 F.Supp. 279 (S.D.N.Y. 1966); *Meyer v. Investment Corporation of America,* Civil Action No. C75–1119A (N.D.Ga. March 4, 1976).

Accordingly, inasmuch as the Court lacks jurisdiction over the person of ICA, the defendant ICA's motion to dismiss is hereby ORDERED GRANTED.