**JAMES WHITEN LIVESTOCK, INC.**

v.

**WESTERN IOWA FARMS, CO. and Scott Mactier.**

**Civ. No. 1:90–CV–1582–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 6, 1990.

**530**

Alton Monroe Adams and Russell William Smith, Adams, Clifton & Sanders, Toccoa, Ga., for plaintiff.

James R. McKoon, Caldwell, Heggie & Helton, Chattanooga, Tenn., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This diversity action alleging libel, fraud and tortious interference with contractual relations is before the court on Plaintiff's motion to amend its complaint and Defendant Western Iowa Farms Co.'s ("Western") motion to dismiss for lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted or, alternatively, for summary judgment.

Plaintiff brought this action in state court on June 18, 1990. Defendants removed it to this court on July 19, 1990. Defendants have not answered the complaint. Instead, Western filed the motion now before the court pursuant to Fed.R. Civ.P. 12(b)(2, 5, 6). Plaintiff opposed that motion and filed a motion to amend its fraud claim. Defendant filed a reply brief.

This dispute arises from several cattle transactions undertaken between November 14, 1989 and January 1990. The parties do not seem to dispute the facts, which are relatively sparse. Defendant Western is incorporated and has its principal place of business in Nebraska. Western operates in several states, but has no registered agent in Georgia. Western is registered with the United States Department of Agriculture, Packers and Stockyards Administration as a "market agency" pursuant to the Packers and Stockyards Act of 1921 ("PSA"). 7 U.S.C. § 181 *et seq.* As a market agency, Western is in the business of financing cattle brokers in their purchases, a business known as a clearing service. Defendant Scott Mactier is vice-president of Western.

On November 14, 1990, Western entered into a clearing arrangement with a cattle broker based in Tennessee named Lannie D. Arnold. As required by regulations promulgated by the Packers and Stockyards Administration, 9 C.F.R. § 201.29(c), Western named Arnold as a clearee on its surety bond. By the terms of the clearing agreement, Arnold operated for his own benefit independent of Western. Western, however, retained the right as clearing agent to investigate potential sellers and to preapprove the checks it would clear for Arnold. The sole deposition produced by Plaintiff indicates that Western never investigated Plaintiff, (Hugh Mactier Deposition, 19–20), and that Western preapproved the clearing of checks by keeping a list provided by Arnold of his probable suppliers. (Hugh Mactier Deposition, 24). The agreement provides that Western was to receive payment from Arnold upon resale of the cattle. Western ended that relationship three months later in January, 1990. Plaintiff has alleged no contacts with Georgia besides those arising from Western's relationship with Arnold.

Plaintiff, a Georgia corporation operating in Stephens County, Georgia, purchases and sells cattle. Plaintiff had dealt with Arnold in the two years preceding the winter of 1989–1990. During the three months in question, Plaintiff sold five lots of cattle to Arnold, and received five checks from Western in payment. Western also called Plaintiff in November 1989 to inquire as to Plaintiff's relationship with Arnold, and called on January 18, 1990 to inform Plaintiff that Western had ended its clearing arrangement with Arnold. Subsequently, on January 24, 1990, Western filed in Georgia a Uniform Commercial Code financing statement claiming an interest in the livestock inventory and accounts receivable of Arnold.

This suit concerns a Proof of Claim filed by Western with the Packers and Stockyards Administration in Omaha, Nebraska on May 17, 1990. The Proof of Claim, only part of which was submitted by Plaintiff, asserted that Western had sold cattle to Plaintiff on January 8, 1990, but had received no payment. Pursuant to the Administration's regulations, Western included the name of Plaintiff's insurer and that of the Georgia Department of Agriculture. Plaintiff alleges that the Proof of Claim's contents are false and constitute libel per se. Furthermore, Plaintiff alleges that Western's actions constitute fraud against Plaintiff's insurer and tortious interference with Plaintiff's contractual relations.

■ Western's challenge to the jurisdiction of the court will be taken up first. The party asserting jurisdiction bears the burden of proving that jurisdiction exists. *Quikrete Companies, Inc. v. NOMIX Corp.*, 705 F.Supp. 568, 571 (N.D.Ga.1989). In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), a court may consider affidavits and other proof outside the pleadings because, unlike a motion under Rule 12(b)(6), it is a test of Plaintiff's proof. *Edwards v. Assoc. Press*, 512 F.2d 258, 262 n. 8 (5th Cir.1975) (citing Wright & Miller, § 1351). A motion to dismiss for lack of personal jurisdiction should be denied "if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hosp. Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). In ruling on this motion, Plaintiff's allegations must be accepted as true, and the case will be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims. *Id.*

In a diversity action, federal courts have personal jurisdiction over nonresident defendants to the extent permitted by the forum state's long-arm statute, Fed.R. Civ.P. 4(e), subject to the limits of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Plaintiff claims jurisdiction under O.C.G.A. § 9–10–91, which provides:

> A Court of this state may exercise personal jurisdiction over any nonresident . . . if in person or through an agent, he:
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. . . . [1]

There are two approaches to interpretation of a broadly written long-arm statute such as § 9–10–91. The first approach reads it strictly, so as to limit jurisdiction to a greater extent than would due process. The strict approach is called the "New York rule" and it requires that the act causing the injury occur with the forum state. The second approach, called the "Illinois rule," *see, Flint v. Gust*, 180 Ga.App. 904, 906, 351 S.E.2d 95 (1986), reads the statute to be coextensive with the limits prescribed by due process, which would allow jurisdiction where the tortious act occurred out of state but caused injury in the forum state if defendant had significant minimum contact with the forum state. *See, Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 109–113, 107 S.Ct. 1026, 1030–33, 94 L.Ed.2d 92 (1987) (most recent discussion by Supreme Court of contacts necessary to establish minimum contacts in tort case).

Since 1973, courts in Georgia have followed the Illinois rule, *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973); *Accord, Clarkson Pow-*

---

1. Subsection 1 of § 9–10–91 relates exclusively to contractual actions. *Quikrete*, 705 F.Supp. at 571 (citing *Lutz v. Chrysler Corp.*, 691 F.2d 996, 997 (11th Cir.1982)). Furthermore, prior to its recodification, the subsections to this statute were labelled by letter. For purposes of simplicity and clarity, references in older opinions to subsections (b) and (c) shall be denominated subsections (2) and (3), respectively.

*er Flow v. Thompson,* 244 Ga. 300, 301, 260 S.E.2d 9 (1979); *First United Bank v. First Nat'l Bank,* 255 Ga. 505, 506, 340 S.E.2d 597 (1986), as have the courts of the Eleventh Circuit interpreting the Georgia long-arm statute, *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 849 (11th Cir.1988). The court in *Clarkson* reasoned that the 1973 amendments to § 9–10–91, which added subsection (3), had manifested an intent to circumvent decisions which had limited jurisdiction pursuant to subsection (b) to situations in which the negligent act occurred in Georgia, as under the New York rule. 244 Ga. at 301, 260 S.E.2d 9. The courts of Georgia subsequently developed a test, derived from the due process decisions rendered by federal courts, for evaluating cases under subsections (2) and (3), which the courts read together. *Id.*

> (1) the nonresident has purposefully done some act or consummated some transaction with or in the forum (but the actual act or omission resulting in the injury here need not have occurred in this state). The defendant need not be physically within the forum when this act or transaction occurs and a single such instance may suffice;
>
> (2) the Georgia plaintiff must have a legal cause of action in tort against the nonresident, which arises out of, or results from, the purposeful activity of the defendant involving this state; a resident is the victim of a "tortious act" when he suffers an injury here due to an act or omission of negligence occurring outside this state; and
>
> (3) if the requirements of (1) and (2) are satisfied, the exercise of jurisdiction over the nonresident must be "reasonable."

*Shellenberger v. Tanner,* 138 Ga.App. 399, 407, 227 S.E.2d 266 (1976) (followed in,

*Smith v. Smith,* 254 Ga. 450, 453, 330 S.E.2d 706 (1985); *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 849 (11th Cir.1988)).

In 1987, however, the Georgia Supreme Court broke its fourteen-year pattern of equating subsections (2) and (3) of the Georgia statute with the due process standard. *Gust v. Flint,* 257 Ga. 129, 356 S.E.2d 513 (1987) (applying § 9–10–91 to a fraud action). The nonresident defendants in *Gust* had only one alleged contact with Georgia: They called the plaintiff in Georgia and fraudulently induced him to send them money. The lower court found that jurisdiction existed under § 9–10–91(2) because, although the defendants' contact with Georgia was slight, it was purposeful and related directly to the plaintiff's fraud action. *Flint v. Gust,* 180 Ga.App. 904, 906–908, 351 S.E.2d 95 (1986) (citing *Shellenberger,* 138 Ga.App. at 411, 227 S.E.2d 266, and *Clarkson,* 244 Ga. at 301, 260 S.E.2d 9). The Georgia Supreme Court reversed, stating that "[w]e need not discuss the relative merits of a 'New York rule' or an 'Illinois rule.' The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction." *Gust,* 259 Ga. at 130, 356 S.E.2d 513. The court thus impliedly overruled prior cases insofar as they interpreted the statute simply as coextensive with the limits prescribed by due process.[2]

The court in *Gust* did not, however, explicitly address the statutory interpretation set forth in *Clarkson,* which read subsections (2) and (3) together. 244 Ga. at 301, 260 S.E.2d 9. Consequently, the question remains to be answered whether, after

---

**2.** Although *Gust* would seem to have overruled the preceding cases which had used the requirements of due process to measure the Georgia statute, *Evans v. Amer. Surplus Underwriters Corp.,* 739 F.Supp. 1526, 1533 (N.D.Ga.1989), an Eleventh Circuit decision handed down eight months after *Gust* continued to follow the prior decisions. *Delong,* 840 F.2d at 853. The district courts in the Eleventh Circuit, although they have addressed *Gust* and declined to extend it to

actions based on contract, *Evans,* 739 F.Supp. at 1533; *Commercial Cas. Ins. Co., Inc. v. BSE Management,* 734 F.Supp. 511, 515 (N.D.Ga. 1990); *Electronic Transaction Network v. Katz,* 734 F.Supp. 492, 498 (N.D.Ga.1989), have yet to address directly the effect of the *Gust* decision on situations involving torts such as that involved here. However, because the *Gust* decision itself dealt with the tort of fraud, it applies directly to this case.

*Gust,* an act occurring outside of Georgia can give rise to jurisdiction in Georgia absent one of the persistent courses of conduct required by subsection (3).[3] The holding in *Gust,* however, as well as the reasoning that led the court to that holding, strongly support the view that *Gust* overruled *Clarkson.* As the facts at issue in *Gust* recited above demonstrate, the plaintiff's action was based on one purposeful contact by the defendants which was intimately connected to the alleged harm and the cause of action in fraud arising from it. Under the earlier approach as exemplified in *Clarkson,* such a connection between the cause of action and the contact with the forum state would support jurisdiction under subsections (2) and (3). *E.g., Flint v. Gust,* 180 Ga.App. at 906–908, 351 S.E.2d at 95; *Payne v. Kristofferson,* 631 F.Supp. 39, 42 (N.D.Ga.1985). The court in *Gust,* however, held that the statute did not grant jurisdiction. 257 Ga. at 130, 356 S.E.2d 513. This holding leaves little room for the *Clarkson* approach.

■ Furthermore, the Court's reasoning in *Gust* also indicates that, where the tortious act sued upon was not committed in Georgia, one of the three types of persistent conduct enumerated in subsection (3) must be present.[4] In granting the defendant's motion to dismiss, the Court in *Gust* enumerated seven types of contact recognized by the Georgia Long–Arm statute as establishing jurisdiction over a nonresident defendant in a tort suit. The Court noted that the defendants

(1) did not regularly do business or solicit business within the State of Georgia, (2) did not engage in any persistent course of conduct within the State of Georgia, (3) did not derive substantial revenue from services rendered with the State of Georgia, (4) the only business done by them in the State of Georgia is the transaction which is the subject of the instant action, (5) the only communications or connection they have had with the State of Georgia had been via telephone communication, (6) that neither they nor any of their employees have ever been located within the State of Georgia, (7) the corporate defendant is not domesticated in or authorized to do business in the State of Georgia and does not manufacture goods or produce any services in the State of Georgia.

*Gust,* 257 Ga. at 129, 356 S.E.2d 513. These factors indicate that where the tortious act did not occur within Georgia (see factors 5–6) then persistent conduct in Georgia (see factors 1–3, 7) beyond the mere commission of the tortious act (see factor 4) must be shown, as the literal wording of subsections (2) and (3) would suggest. *See, Bradlee,* 249 Ga. at 617–618, 292 S.E.2d 717; *Attwell,* 607 F.2d at 1161.

Furthermore, the Supreme Court of Georgia has held that in defamation cases the explicit exclusion of jurisdiction set forth in subsection (2) controls. *Bradlee,* 249 Ga. at 617–618, 292 S.E.2d 717. The Supreme Court affirmed the judgment of the court of appeals which had held, as a matter of law, that subsection (2), as interpreted by *Clarkson,* precluded all long arm jurisdiction in defamation cases. The Georgia Supreme Court reasoned differently, concluding that jurisdiction over nonresidents in defamation cases could be proper despite the exclusionary language of subsection (2), but only if the plaintiff demonstrated the persistent type of conduct required under subsection (3). 249 Ga. at 617–618, 292 S.E.2d 717. Although *Bradlee* approves generally of the *Clarkson* line of reasoning which *Gust* seems to have overruled, the *Bradlee* decision in fact de-

---

**3.** Numerous cases prior to *Gust,* as noted above, had so held. *E.g., Payne v. Kristofferson,* 631 F.Supp. 39, 42 (N.D.Ga.1985) (citing cases). At least one Fifth Circuit case, decided after *Shellenberger* and *Coe & Payne* but before *Clarkson* took the opposite view. *Attwell v. LaSalle Nat'l Bank,* 607 F.2d 1157 (5th Cir.1979). The *Attwell* opinion reads subsections (2) and (3) separately, and does not allow an action on a tortious act committed outside Georgia to support jurisdic-

tion under subsection (2) or (3) absent persistent contacts. 607 F.2d at 1161.

**4.** Subsection (2) expressly precludes consideration of a defamatory act as an act giving rise to jurisdiction under that subsection. *Bradlee Management Serv. v. Cassells,* 249 Ga. 614, 617–18, 292 S.E.2d 717 (1982); *Attwell,* 607 F.2d at 1161. See discussion below.

parts from *Clarkson* because it reads subsections (2) and (3) separately. The reasoning in *Bradlee,* therefore, is consistent with *Gust's* treatment of the statute.

■ Applying the statute to the facts of this case, it is apparent that jurisdiction under subsection (2) does not exist. The tortious act of which Plaintiff complains, *i.e.,* the Proof of Claim filed by Western in Nebraska with the Packers and Stockyards Administration occurred outside Georgia and that act is tortious only because defamatory. Thus, under both the reading of subsection (2) in *Gust* and the plain wording of the subsection, *see Bradlee,* 249 Ga. at 617–618, 292 S.E.2d 717; *Attwell,* 607 F.2d at 1161, jurisdiction based on the filing of a Proof of Claim outside Georgia is not proper on the authority of subsection (2).

■ Following the reasoning of *Bradlee* and *Gust,* it remains for the court to determine whether Western had regular or persistent contacts with Georgia sufficient to justify jurisdiction under subsection (3). Plaintiff argues that Western's provision of clearing services to Arnold constituted a "service rendered" in Georgia from which it derived substantial revenue; that Western regularly conducted business in Georgia through Arnold; and that Western's relationship with Arnold, including mailing five payments to Plaintiff and twice telephoning Plaintiff in Georgia, constituted a persistent course of conduct in Georgia. Plaintiff supports this imputation of Arnold's business dealings to Western by pointing to elements of the clearing agreement which allow Western to investigate and approve Arnold's deals involving its money, as well as security arrangements in the agreement. Consequently, argues Plaintiff, subsection (3) grants jurisdiction over Western.

Western's conduct, as shown by Plaintiff, fails to constitute sufficient contacts under the statute because Arnold's regular business conduct in Georgia is not attributable to Western, and Western's conduct of mailing checks and telephoning into Georgia are insignificant. Western and Arnold are not principal and agent because the elements of neither actual nor apparent agency have been shown. The clearing agreement expressly created an independent contractor relationship and Plaintiff does not show that Western held out Arnold to Plaintiff as its agent. Instead, the relationship between Western and Arnold is essentially that of lender and borrower, which does not normally subject a nonresident lender to jurisdiction under the Georgia statute. *Attwell,* 607 F.2d at 1161;[5] *Robinson v. Ravenel Co., Inc.,* 411 F.Supp. 294, 296 (N.D.Ga.1976) (interpreting "transacts business in Georgia" prong of § 9–10–91).[6] Although lending money knowing that it will be used in the forum might constitute a "minimum contact," as Plaintiff suggests by its citation of "minimum contacts" cases (*e.g., Hollingsworth v. Cunard Line Ltd.,* 152 Ga.App. 509, 515, 263 S.E.2d 190 (1979)), that analysis is pertinent only for due process analysis. After *Gust,* the Georgia statute is more demanding than is due process, *Evans,* 739 F.Supp. at 1533 (dicta), and loaning money to a

**5.** In *Attwell,* 607 F.2d 1157 (5th Cir.1979) (interpreting Georgia's long-arm statute) an Illinois bank sued a Georgia obligee in Illinois on a note entered into in Illinois. The obligee then sued the bank in Georgia for, *inter alia,* defamation and interference with business relations based on the Illinois lawsuit. The facts indicated that other than the note itself, the bank's only contact with Georgia consisted of communications with the obligee. The court found that no persistent course of conduct under subsection (3) was present. Further, the court found that without such a persistent course of conduct, the very language of subsection (2) required that "the conduct vesting jurisdiction must be an act or omission separate and apart from the act of

which they here complain...." *Attwell,* 607 F.2d at 1161.

**6.** The "transacts business" standard applied in contract cases under subsection (1) has generally been thought to be stricter than the test utilized in tort cases under the approach advocated in *Clarkson* and its progeny, despite the similar "regularly does or solicits business" language in subsection (3). *Gust* and *Bradlee,* however, indicate that, at least in defamation cases, subsection (3) is now to be read literally and on its own. Consequently, the court looks to cases interpreting subsection (1) for guidance in interpreting the newly emancipated and empowered regularly does or solicits business requirement of subsection (3).

dealer in Tennessee who will use it in Georgia does not constitute a service rendered, or a business regularly conducted, in Georgia simply because it might be a minimum contact. Investigating the borrower and preapproving the borrower's use of the funds, steps necessary to safeguard almost any loan, do not distinguish the clearing agreement in this case from the loans in *Attwell* and *Robinson*.

Furthermore, mailing checks and making telephone calls into Georgia have not been considered persistent contacts. *Gust*, 257 Ga. at 130, 356 S.E.2d at 717 (telephone calls including fraudulent misrepresentations do not constitute contacts under Georgia statute); *Gen'l Elec. Credit Union v. Scott's Furniture Warehouse*, 699 F.Supp. 907, 913 (N.D.Ga.1988) (defendant's mailing of payment checks and telephone calls into Georgia did not constitute even minimum contacts). *Pennington v. Toyomenka, Inc.*, 512 F.2d 1291, 1293 (5th Cir.1975) (interpreting "transacts business" requirement of § 9–10–91(1)). This conclusion is even more appropriate where, as here, some of those communications merely reflect attempts by a lender to pin down the assets of a borrower against which he has a claim. *See Attwell*, 607 F.2d at 1161 (phone calls seeking repayment of a loan); *Pennington*, 512 F.2d at 1294 (post-contract meetings in Georgia to negotiate with a bankrupt party do not constitute transacting business under § 9–10–91(1)).

Similarly, Western's claim to Arnold's assets and its filing of a UCC financing statement in Georgia after its relationship with

Arnold went sour does not show a persistent course of conduct in Georgia. Rather, it represents an attempt by a lender to secure its loan and a subsequent attempt to track down assets which a delinquent borrower had, perhaps, taken into Georgia. *See Pennington*, 512 F.2d at 1294.[7] The single filing neither makes Western more responsible for Arnold's conduct nor demonstrates persistent conduct by Western in Georgia. Finally, all of Plaintiff's arguments, taken together, do not raise an inference that Western was any more involved with Arnold's business dealings in Georgia than is any commercial lender who conditions a loan on its right to investigate and understand what the borrower seeks to do with the loaned money, *see, Attwell*, 607 F.2d at 1161, and then pursues the borrowed assets after default, *see, Pennington*, 512 F.2d at 1294. Plaintiff's allegations, taken in the light most favorable to it, fail to show the type of persistent conduct on Western's part which the Georgia long-arm statute requires.

Accordingly, Defendant Western's motion to dismiss for lack of personal jurisdiction is GRANTED. Plaintiff's motion to amend its complaint is DENIED as moot.

SO ORDERED.

---

7. Western asserts that the cattle which were the subject of the financing statement were no long-

er in Georgia at the time of filing. The point, however, is not a dispositive one.